IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **LAMON TERRILL MASSENGILL,** ) | |
| ) | |
| Movant, ) | |
| v. ) | No. 1:23-cv-01037-STA-jay |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING IN PART MOVANT'S MOTION TO VACATE, SET ASIDE, OR
CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255
ORDER DIRECTING THE CLERK TO SEND FORMS
ORDER OF REFERENCE TO DETERMINE ELIGIBILITY FOR APPOINTMENT OF
COUNSEL**

Before the Court is Movant Lamon Terrill Massengill's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 1). Massengill, who is representing himself, is an inmate, Bureau of Prisons register number 40138-509, currently housed at the Federal Correctional Institution in Texarkana, Texas. The United States of America has responded in opposition to Massengill's request, and Massengill has filed a reply brief. For the reasons set forth below, the Motion is **DENIED in part**. Because an evidentiary hearing will be necessary to decide Massengill's remaining claim, the Court will refer to the United States Magistrate Judge the question of whether Massengill qualifies for appointment of counsel to represent him at the evidentiary hearing and, if so, the appointment of counsel.

**BACKGROUND**

On April 12, 2021, a grand jury returned an indictment (no. 1:21-cr-10025, ECF No. 1), charging Massengill with three offenses. Count 1 charged Massengill with possessing with the

1

intent to manufacture, distribute, or dispense cocaine base in violation of 21 U.S.C. § 841(a)(1). Count 2 and Count 3 charged Massengill with being a person previously convicted of a felony offense found in possession of two different firearms, each a violation of 18 U.S.C. § 922(g)(1). Massengill was brought before the Magistrate Judge for an initial appearance on the charges on April 16, 2021. At the conclusion of the initial appearance, the Magistrate Judge appointed CJA panel member Jennifer Free, Esq. to represent Massengill. Ms. Free represented Massengill throughout the proceedings on his criminal charges. The Magistrate Judge held a detention hearing and arraignment on April 29, 2021, at which time Massengill entered a plea of not guilty to the charges.

After the entry of a scheduling order to govern the pretrial phase of the case, on November 24, 2021, the parties notified the Court that they had reached a plea bargain to resolve the charges against Massengill. Massengill had agreed to plead guilty to the controlled substances offense charged in Count 1 and the firearms offense charged in Count 2. In exchange the government agreed to dismiss the remaining firearms count at sentencing. As part of the plea bargain, Massengill waived his right to appeal, unless his sentence exceeded the statutory maximum. Plea Agr. ¶ 6 (no. 1:21-cr-10025, ECF No. 27). Massengill also waived his right to bring a collateral challenge to his sentence under 28 U.S.C. § 2255. *Id*. ¶ 7.

The Court held a hearing on December 13, 2021, to determine whether to accept Massengill's change of plea. During the plea hearing, the undersigned conducted a Rule 11 colloquy, making certain that Massengill understood the charges to which he was pleading guilty, the minimum and maximum penalties, the rights he was giving up by pleading guilty, and the procedure for the sentencing phase. The Assistant United States Attorney also reviewed the factual basis for the charges against Massengill, facts which Massengill admitted in open court. Having

satisfied itself that Massengill understood his rights and had voluntarily agreed to waive them as part of his agreement with the government, the Court accepted Massengill's guilty plea as to Counts 1 and 2.

In anticipation of sentencing, the United States Probation Office prepared the presentence report (the "PSR") (no. 1:21-cr-10025, ECF No. 30). According to the PSR, the statutory maximum sentence for Massengill's drug crime was 20 years' imprisonment. Because Massengill qualified as an armed career criminal under the Armed Career Criminal Act, the statutory minimum on the firearms offense was 15 years and the maximum life in prison. The PSR calculated a total adjusted offense level of 31 and a criminal history category of VI. *Id*. at ¶ 27. Based on an offense level of 31 and a criminal history category of VI, the Guidelines range for Massengill's offenses was 188 months to 235 months. Massengill through appointed counsel Ms. Free filed a position paper on the PSR, stating that Massengill had no objection to the PSR. Def.'s Position Paper, Mar. 14, 2022 (ECF No. 32).

The Court held a sentencing hearing on March 15, 2022. After hearing argument from counsel and allocution from Massengill, the Court adopted the findings of the PSR and analyzed the sentencing factors set forth in 18 U.S.C. § 3553(a).[1] The Court sentenced Massengill to 180

---

[1] Pursuant to 18 U.S.C. § 3553(a), a court must reach an appropriate sentence by considering "the kinds of sentence and the sentencing range" under the advisory Guidelines and "policy statements," as well as the following additional factors: "the nature and circumstances of the offense and the history and characteristics of the defendant; ... the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,] . . . to afford adequate deterrence to criminal conduct[,] . . . to protect the public from further crimes of the defendant[,] and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

months on each count to run concurrently and three years of supervised release. Judgment (no. 1:21-cr-10025, ECF No. 34) was entered the same day. Massengill did not appeal.

Massengill raises three different grounds for relief as part of his § 2255 Motion. Ground 1 alleges that Massengill's trial counsel was ineffective for failing to file a notice of appeal when instructed to do so and to consult with Massengill about an appeal. Massengill alleges he disagreed with the Court's decision to classify him as an armed career criminal and wanted to appeal that aspect of his sentence. Massengill claims he asked Ms. Free to appeal the judgment of the Court and that her failure to appeal violated his right to effective assistance of counsel. Ground 2 is that trial counsel was ineffective by failing to advise Massengill he would be subject to the ACCA enhancement. In deciding to accept a plea bargain, Massengill believed he was facing no more than six years' incarceration, and perhaps a sentence as short as two years. Ground 3 is that trial counsel failed to object when the Court found Massengill's prior convictions under Tennessee law for aggravated assault and aggravated burglary qualified as ACCA predicate offenses. According to Massengill, his convictions are not qualifying convictions based on the Supreme Court's decision in *Borden v. United States*, 593 U.S. 420 (2021).

The government has responded in opposition to Massengill's § 2255 Motion. As part of its Answer (ECF No. 16) to the § 2255 Motion, the government has submitted a transcript of Massengill's change-of-plea hearing (ECF No. 16-1) and a declaration from Jennifer D. Free (ECF No. 16-2). Ms. Free states in her affidavit that as part of her representation of Massengill, she reviewed the plea agreement with Massengill prior to the change-of-plea hearing. Consistent with her general practice in every case, Ms. Free read the plea agreement aloud in its entirety with Massengill and ensured he understood the terms and conditions contained in the agreement before

4

he accepted it. Ms. Free explained to Massengill that the agreement did not provide for a specific sentence and that he faced a mandatory minimum sentence of 15 years.

Ms. Free also states that she met with Massengill and his spouse before sentencing and read through every word of the PSR with Massengill. Massengill had met with prosecutors to discuss cooperating in other investigations; however, Massengill ultimately decided not to cooperate when his wife expressed a concern about him doing so. Ms. Free opines that Massengill's sentence would have likely been lower, had he provided assistance to the government. Ms. Free states that any statement she might have made to Massengill about his possible sentence assumed his cooperation with authorities.

Ms. Free finally states that she discussed with Massengill his prior convictions for burglary, aggravated burglary, and aggravated assault. Based on his prior convictions, Ms. Free advised Massengill before he accepted the plea bargain that he would be considered an Armed Career Criminal offender and would face a mandatory minimum sentence of 15 years on the firearms charge against him. Ms. Free once more advised Massengill that he would qualify as an Armed Career Criminal offender once she reviewed the PSR with Massengill. Ms. Free denies that Massengill or anyone else indicated to her that Massengill wanted to appeal. Ms. Free states that Massengill and his wife left the courtroom immediately after the conclusion of the sentencing hearing.

The government has also made copies of several of Massengill's previous convictions exhibits to its response. Massengill was charged with a string of burglaries from 1996 and 1997 in Chester County, Tennessee. According to the exhibits filed by the government, Massengill ultimately pleaded guilty to the relevant charges. The Circuit Court for Chester County, Tennessee entered separate judgments as to each charge on December 17, 1997. In an indictment dated March

3, 1997, and docketed as *State v. Lamon Massengill*, case no. 3637 (ECF No. 16-3), a grand jury in Chester County, Tennessee charged Massengill with two counts of aggravated burglary and two counts of theft of property over $1,000, based on the robbery of two different houses committed in June 1996. The court sentenced Massengill to four years' imprisonment as to each of the aggravated burglary charges and three years on the theft of property charges, each sentence to run concurrently.

In an indictment dated July 7, 1997, and docketed as *State v. Lamon Massengill*, case no. 3665 (ECF No. 16-4), a Chester County grand jury charged Massengill with committing aggravated burglary and theft of property over $500 on March 26, 1997. The court sentenced Massengill to four years on the aggravated burglary and two years on the theft of property, both sentences to run concurrently to each other and consecutively to Massengill's sentence in case no. 3637.

In an indictment dated November 3, 1997, and docketed as *State v. Lamon Massengill*, case no. 3683 (ECF No. 16-5), a Chester County grand jury charged Massengill with burglary, theft of property, and vandalism, all committed on June 27, 1997. The court sentenced Massengill to four years on the burglary and two years on the theft of property, both sentences to run concurrently to each other and consecutively to Massengill's sentence in case no. 3637. The government's exhibit does not show what the disposition of the vandalism charge was.

Finally, in an information dated November 19, 1997, and docketed as *State v. Lamon Massengill*, case no. 3692 (ECF No. 16-6), the State of Tennessee charged Massengill with two counts of aggravated burglary, one count of theft of property over $1,000, and one count of theft of property over $500, all based on the robbery of two different houses, one in May 1996 and the other in June 1996. The court sentenced Massengill to four years on the aggravated burglaries,

6

three years on the theft of property over $1,000, and two years on the theft of property over $500, all sentences to run concurrently to each other and with Massengill's sentence in case no. 3637 and consecutive to his sentences in the other cases.

In its last exhibit, the government made copies of Massengill's previous conviction for aggravated assault part of the record. In an indictment dated September 30, 2002, and docketed as *State v. Lamon Massengill*, case no. 02-612 (ECF No. 16-7), a Madison County, Tennessee grand jury charged Massengill with two counts of attempted second degree murder and two counts of aggravated assault on July 7, 2002. The record shows that Massengill pleaded guilty to the aggravated assault charges and received sentences of 10 years' incarceration on each charge.

## **STANDARD OF REVIEW**

A petitioner seeking § 2255 relief "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Gabrion v. United States*, 43 F.4th 569, 578 (6th Cir. 2022) (citation omitted). A movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *United States v. Brown*, 957 F.3d 679, 690 (6th Cir. 2020). "[C]onclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *Gabrion*, 43 F.4th at 578 (citation omitted)).

The Sixth Amendment guarantees criminal defendants "the right . . . to have the Assistance of Counsel for [their] defence." U.S. Const. am. VI. The right to counsel includes "the right to the effective assistance of counsel." *Garza v. Idaho*, 586 U.S. 232, 237 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). The Supreme Court has described the right to effective assistance of counsel as "a bedrock principle" and the "foundation for our adversary system" of

7

criminal justice. *Martinez v. Ryan*, 566 U.S. 1, 12 (2012). "[T]he Sixth Amendment's requirement that defendants receive 'the effective assistance of competent counsel' extends to all critical stages of a criminal proceeding." *Gilbert v. United States*, 64 F.4th 763, 770 (6th Cir. 2023) (quoting *Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019)). A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is cognizable under § 2255. *Gilbert*, 64 F.4th at 770 (citing *Massaro v. United States*, 538 U.S. 500, 504, 508–09 (2003)). A court may only grant relief under § 2255 if the petitioner demonstrates "a fundamental defect which inherently results in a complete miscarriage of justice." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

In order to carry his burden and show that he was deprived of his right to counsel, Massengill "must show deficient performance by counsel and resulting prejudice to the defendant." *Griffin*, 330 F.3d at 736 (citing *Strickland*, 466 U.S. at 687, 694). First, to demonstrate deficient performance, Massengill "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 at 690. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

Then, to demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

Section 2255 indicates: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon[.]" 28 U.S.C. § 2255(b); *see also* Rules Governing § 2255 Proceedings, Rule 4(b). The Sixth Circuit has "interpreted this statutory language (and the accompanying procedural rules) to require a hearing only if a prisoner meets a standard analogous to the summary-judgment test by creating a legitimate dispute over a legally important fact." *Wallace v. United States*, 43 F.4th 595, 606–07 (6th Cir. 2022) (citations omitted). "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

## ANALYSIS

### I. Ground 1 – Counsel's Failure to File a Notice of Appeal

In his first ground for relief, Massengill alleges that Ms. Free provided ineffective assistance when she did not follow Massengill's instructions to appeal the Court's judgment.

9

Massengill asserts that Ms. Free had advised him prior to sentencing that he would likely receive a sentence of no more than 6 years' incarceration. When the Court sentenced him to 180 months, Massengill claims he told Ms. Free he wanted to appeal. Massengill argues that he can introduce proof in support of his claim at an evidentiary hearing, including testimony from his wife, phone records, and correspondence with Ms. Free. In her affidavit, Ms. Free denies that Massengill (or his wife) ever discussed filing an appeal with her or notified her of Massengill's wish to appeal.

The Supreme Court has held that an attorney provides ineffective assistance "if, after consulting with his client, he disregards specific instructions from his client to file a notice of appeal"—"a purely ministerial task." *Pola v. United States*, 778 F.3d 525, 533 (6th Cir. 2015) (quoting *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000)). If a § 2255 movant can show that his trial counsel failed to appeal "either after the client's express instructions or because there is no reasonable strategic reason not to appeal, then the defendant was prejudiced because he has been deprived of the appellate proceeding altogether if there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* (citing *Roe*, 528 U.S. at 483–84).

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine*, 488 F.3d at 333 (internal quotation marks omitted). The Court is unable to resolve on the present record Massengill's claim of ineffective assistance of counsel related to an appeal in his criminal case. The most efficient means of resolving the issues presented is through an evidentiary hearing on Massengill's claim that his attorney rendered ineffective assistance as it relates to his appeal. Before setting the evidentiary hearing, the Court must next decide whether Massengill qualifies for appointment of counsel.

"If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rule 8(c), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). Although Massengill may be entitled to appointed counsel, the Court presently has no information to determine his financial eligibility. Therefore, Massengill is **ORDERED** to file an *in forma pauperis* affidavit within thirty (30) days of the entry of this Order to demonstrate his financial eligibility for appointment of counsel. The Clerk is **DIRECTED** to send Massengill the proper forms for seeking leave to proceed *in forma pauperis* and make an entry on the docket stating when those forms were mailed. The Court hereby refers to the United States Magistrate Judge the issue of whether Massengill is financially eligible for appointed counsel and, if so, to make the appointment. The Court will set the evidentiary hearing by separate order after the Magistrate Judge has resolved the matter of appointment of counsel.

**II. Grounds 2 & 3 – Massengill's Waiver of his Right to File a Collateral Attack**

The next issue presented is whether Massengill has made a valid waiver of his right to file a § 2255 Motion. In his plea agreement with the government, Massengill agreed "to waive his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code § 2255." Plea Agr. ¶ 7 (no. 1:21-cr-10025, ECF No. 27). The government argues that the collateral attack waiver in the plea agreement precludes the claims alleged in Grounds 2 and 3. In Ground 2 of his § 2255 Motion, Massengill alleges that Ms. Free was ineffective because she never advised him during plea negotiations he would be subject to an

enhanced sentence under the ACCA. In Ground 3, Massengill alleges that Ms. Free failed to object at sentencing when the Court found that Massengill's prior convictions under Tennessee law for aggravated assault and aggravated burglary qualified as ACCA predicate offenses.

A defendant may bargain away a right, "even a constitutional one," as part of a plea agreement, as long as he does so knowingly and voluntarily. *Portis v. United States*, 33 F.4th 331, 334–35 (6th Cir. 2022) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). The same reasoning permits a defendant to "waive his right to bring future postconviction challenges, which are not constitutionally required, so long as the waiver is knowing and voluntary." *Id*. at 335 (citing *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999)). Here, Massengill has not alleged that he did not knowingly and voluntarily enter into the collateral attack waiver or that Ms. Free provided ineffective assistance in negotiating a plea agreement with such a waiver. In fact, Massengill has not addressed the collateral attack waiver or the government's waiver argument at all. As a result, Massengill has not properly challenged the enforceability of the plea agreement's collateral attack waiver.

And the record belies any such notion that Massengill did not knowingly and voluntarily enter into the plea agreement. Federal Rule of Criminal Procedure 11 governs plea bargaining and requires a district court "before the court accepts a plea of guilty . . . [to] address the defendant personally in open court" and as part of the address or colloquy, to "inform the defendant of, and determine that the defendant understands" his trial-related rights and the consequences of waiving them by entering into a guilty plea. Fed. R. Crim. P. 11(b)(2). The Court also has a duty to "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)" and "that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(2) & (3).

12

At a change-of-plea hearing on December 13, 2021, the Court conducted a full Rule 11 plea colloquy with Massengill. Massengill affirmed under oath that he had discussed his case with Ms. Free and was satisfied with her representation. Plea Hr'g Tr. 13:22-14:12. Massengill stated to the Court that he had signed the plea agreement (id. at 21:21-24), that he had gone over the agreement with Ms. Free prior to signing it (*id.* at 21:2-5), and that he understood the terms of the agreement (*id.* at 21:6-10). After the Assistant United States Attorney read the plea agreement aloud, Massengill stated that the terms and conditions read aloud were the terms and conditions as he understood them. *Id*. at 31:6-12. The Court then reviewed several provisions of the plea agreement in more detail with Massengill, including the collateral attack waiver. After the Court explained the waiver to Massengill, Massengill affirmed that he understood the waiver and that he intended to give up his right to mount a collateral attack on his sentence. *Id.* at 33:21-34:15. Massengill also represented to the Court that he was satisfied with Ms. Free's representation and that he had accepted the agreement freely and voluntarily. *Id*. at 35:6-36:15.

A defendant's response in open court and as part of a Rule 11 plea colloquy "must prevail over the assertions in [a] § 2255 motion." *Roman v. United States*, 2021 WL 8055773, at *2 (6th Cir. 2021) (citing *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999)). "Solemn declarations in open court carry a strong presumption of verity," and even though "the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable," overcoming that presumption must nevertheless require considerable support in the record. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Massengill's statements to the Court during the Rule 11 plea colloquy are entitled to a presumption of truth, and Massengill has not cited anything in the record to displace that presumption. In the absence of some showing as to why the Court should not enforce the collateral attack waiver, the Court concludes that Massengill knowingly and

13

voluntarily waived his right to challenge his conviction and sentence, and the manner in which his sentence was determined, in a collateral attack. Massengill's § 2255 must be denied as to Grounds 2 and 3 for this reason alone.

### III. Grounds 2 & 3 – Failure on the Merits

As part of its Answer to Massengill's § 2255 Motion, the government has gone on to argue the merits of Massengill's claims in Grounds 2 and 3. Even if the collateral attack waiver in the plea agreement did not prevent Massengill from raising the claims in Grounds 2 and 3, the Court holds in the alternative that Grounds 2 and 3 would fail on the merits.

### A. Ground 2 – Ineffective Assistance in the Plea Bargaining Process

Massengill alleges in Ground 2 that Ms. Free failed to explain Massengill's possible sentence as an Armed Career Criminal offender during plea negotiations. "[W]hen the Government chooses to enter into plea negotiations, the Constitution requires that defendants receive effective assistance in navigating that crucial process." *Rodriguez-Penton v. United States*, 905 F.3d 481, 489 (6th Cir. 2018) (citing *Lafler v. Cooper*, 566 U.S. 156, 168 (2012)). Effective assistance includes "accurate advice regarding sentence exposure." *Id.* (citations omitted). "A criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). Defense counsel cannot sufficiently explain sentencing exposure to a defendant without "completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time." *Id.*

Massengill has not shown how Ms. Free's representation in the bargaining process was ineffective or how her supposed ineffectiveness caused him any prejudice. First, Massengill's

14

allegation about Ms. Free's failure to advise him about a possible sentence on the firearms offense in Count 2 as an Armed Career Criminal offender contradicts the record at his change-of-plea hearing.  The Assistant United States Attorney reviewed the possible penalties for the offenses, including the possibility that Massengill might qualify for an enhanced sentence and mandatory minimum under the ACCA.  Massengill represented to the Court that Ms. Free had gone over his potential sentence with him and that he understood the range of penalties.  Based on Massengill's responses during the plea colloquy, the Court concludes that Massengill cannot now contradict the record and assert that Ms. Free failed to discuss the sentencing process and the possibility of an ACCA sentence, which would have included a statutory minimum sentence of 180 months, he might receive prior to Massengill deciding to plead guilty to Count 2.  *Cadavid-Yepes v. United States*, 635 F. App'x 291, 299–300 (6th Cir. 2016) ("[E]ven if counsel gives a defendant erroneous information, a defendant is not entitled to relief if the misinformation is directly refuted on the record by the district judge during a plea colloquy.").

Second, Massengill has not shown how any alleged failure on Ms. Free's part prejudiced him during plea bargaining.  Even assuming Ms. Free failed to advise Massengill about the ACCA and a mandatory minimum sentence of 15 years, Massengill must still show that Ms. Free's ineffectiveness resulted in prejudice.  As part of this showing, Massengill must prove either that he would have gone to trial but for counsel's ineffectiveness or that he would have bargained for a more favorable plea.  In order to prove prejudice in the context of plea negotiations, the defendant must show "a reasonable probability that, with proper advice, the outcome of those negotiations would have been different."  *Rodriguez-Penton*, 905 F.3d at 489–90.  A defendant can establish prejudice by "showing he would have gone to trial but for the bad advice during the plea process"

15

or that "had he known about the risk of adverse . . . consequences, he would have bargained for a more favorable plea." *Gilbert*, 64 F.4th at 771 (citations omitted).

Showing prejudice with proof he would have gone to trial requires a defendant to satisfy a two-part test: (1) going to trial "would have been rational" under the circumstances of his case; and (2) a reasonable likelihood based on "evidence contemporaneous with his plea" that the defendant would have elected to go to trial. *United States v. Singh*, 95 F.4th 1028, 1033 (6th Cir. 2024) (citing *Lee v. United States*, 582 U.S. 357, 370 (2017)) (other citations omitted). This showing is a "high bar" for a defendant who pleaded guilty and available only in "unusual circumstances." *Id.* at 1033–34 (quoting *Lee*, 582 U.S. at 368–69).

Showing prejudice with proof he would have bargained for a more favorable plea requires a defendant to show "based on contemporaneous evidence" the following elements: (1) a reasonable probability the defendant would have rejected the plea offer, (2) the government would have made an offer more favorable for the defendant, (3) the defendant would have accepted the more favorable offer, and (3) the trial court would have accepted the plea bargain. *Id.* at 1034 (citations omitted). This is also a "difficult standard to meet" and one "rarely" successful. *Id.*

Nothing in the record shows that Massengill could satisfy the high standard and make either showing to prove his ineffective assistance claim. Massengill has not alleged or even implied that there is contemporaneous evidence that going to trial "would have been rational" or that he would have in fact gone to trial. *Singh*, 95 F.4th at 1033. Furthermore, there is no evidence the government made more than one plea offer to Massengill or would have considered an offer for a specific sentence. Fed. R. Crim. P. 11(c)(1)(C) (allowing the government and a defendant to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor

does or does not apply"). For all of these reasons, Massengill has not met his burden to prove that any ineffectiveness on Ms. Free's part prejudiced Massengill during the plea bargaining process. Therefore, Massengill's § 2255 Motion is **DENIED** as to Ground 2.

### B. Ground 3 – Failure to Object to ACCA Predicate Offenses at Sentencing

Massengill's allegation in Ground 3 implicates the Armed Career Criminal Act and the Court's conclusion at sentencing that Massengill's prior aggravated assault convictions were ACCA predicate offenses. "The ACCA requires a district court to impose a sentence of at least fifteen years' imprisonment on any person who violates 18 U.S.C. § 922(g) and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." *United States v. Schumaker*, 83 F.4th 1031, 1035 (6th Cir. 2023) (quoting 18 U.S.C. § 924(e)(1) (internal quotation marks omitted)). The gravamen of Massengill's argument is that his aggravated assault convictions from 2002 are not qualifying "violent felonies." Massengill also alleges in a single sentence found in a memorandum of law in support of his § 2255 Motion that his "second case of Aggravate Burglary-Forgery" does not qualify as an ACCA violent felony. Movant's Mem. in Support 10 (ECF No. 1, Page ID 22). The record does not actually contain any evidence that Massengill has a forgery conviction or that such a crime factored in any way into the Court's determination that Massengill was an ACCA offender. In any event, according to Massengill, Ms. Free's failure to contest the Court's application of the ACCA was deficient.

The Court holds that any objection to counting Massengill's aggravated assault convictions as ACCA predicates would have been without merit, meaning Massengill cannot show how Ms. Free's decision not to object constituted ineffective of assistance of counsel. First and foremost, Massengill had three or more qualifying ACCA violent felonies based on his prior convictions for

17

burglary and aggravated burglary alone. The record shows that at the time of his illegal gun possession, Massengill had one previous burglary conviction and 5 aggravated burglary convictions. The Supreme Court held in *United States v. Stitt*, 586 U.S. 27 (2018) that aggravated burglary under Tennessee law constituted a violent felony for purposes of the ACCA. *See also Brumbach v. United States*, 929 F.3d 791, 792 (6th Cir. 2019). According to the PSR, Massengill committed one burglary on June 27, 1997, and five aggravated burglaries, two at different locations on June 6, 1996; two at different locations on July 6, 1996; and one on May 14, 1997. As a matter of law, Massengill had at least three prior violent felony convictions and qualified as an Armed Career Criminal offender, with or without his aggravated assault convictions.

Massengill's ineffective assistance claim focuses on the nature of his aggravated assault convictions and whether the Court correctly counted them as ACCA violent felonies.[2] It is true the Supreme Court in *Borden* held that a conviction for reckless aggravated assault under Tennessee law did not qualify as an ACCA violent felony. Tenn. Code Ann. § 39–13–102 defines two kinds of aggravated assaults, an intentional or knowing assault and reckless assault. § 39–13–

---

[2] Massengill does contest whether his burglary and aggravated burglary convictions "occurred on occasions different from each other." *Wooden v. United States*, 595 U.S. 360 (2022). The ACCA requires that qualifying predicate offenses occur on "occasions different from each other." The determination of whether offenses happened on "occasions different" requires consideration consider of the following factors: (1) the timing of the offenses—"offenses separated by substantial gaps in time or significant intervening events" would not count as part of one occasion; (2) proximity of location of the offenses— "the further away crimes take place, the less likely they are components of the same criminal event"; and (3) "the character and relationship of the offenses." *Schumaker*, 83 F.4th at 1035 (citing *Wooden*, 595 U.S. at 369).

The Supreme Court recently held that the Fifth and Sixth Amendments entitle a defendant facing an enhanced sentenced under the ACCA "to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt." *Erlinger v. United States*, 144 S.Ct. 1840, 1852 (2024). Nothing in *Erlinger* suggested that its ruling applied retroactively to cases on collateral review. Because Massengill has not raised this issue as grounds to vacate his sentence, the Court need not address it further.

102(a)(1) &(2) (2002). The indictment against Massengill accused him of two counts of intentional aggravated assault, not reckless aggravated assault.[3] Indictment (ECF No. 16-7, Page ID 155-56). At the time of Massengill's aggravated assault convictions, Tennessee punished intentional aggravated assault as a Class C felony and reckless aggravated assault as a Class D felony. § 39–13–102(d)(1) (2002). According to the judgment sheet, Massengill pleaded guilty to the Class C felony "aggravated assault" which underscores the fact that Massengill was guilty of intentional aggravated assault, not reckless aggravated assault. Massengill has not shown then why his aggravated assault conviction would not also qualify as an ACCA violent felony.

In sum, Massengill has at least three violent felonies based on his burglary and aggravated burglary convictions alone, even without counting his convictions for aggravated assault. Massengill simply cannot show why Ms. Free was ineffective by failing to raise an argument about his aggravated assault convictions at sentencing or how any supposed ineffectiveness on Ms. Free's part changed the outcome of the sentencing phase. Therefore, Massengill's § 2255 Motion is **DENIED** as to Ground 3.

## CONCLUSION

The Court holds that a factual dispute over Massengill's intent to appeal the judgment against him requires an evidentiary hearing. The Court will make a final determination of Massengill's claim in Ground 1 of his § 2255 Motion after a determination is made about appointed counsel and an evidentiary hearing is complete. As for the claims in Grounds 2 and 3, the Court holds that Massengill waived his right to bring a collateral attack as part of his plea agreement. In

---

[3] Massengill's two aggravated assault convictions arose out of an allegation that Massengill fired a gun at his ex-girlfriend and a male companion. *Schumaker*, 83 F.4th at 1037 ("Binding Sixth Circuit precedent allows district courts to consider non-elemental facts contained in *Shepard* documents to determine if a defendant has committed predicate ACCA offenses on different occasions.").

the alternative, the claims fail on the merits.  Therefore, Massengill's § 2255 Motion is **DENIED** as to Grounds 2 and 3.

    **IT IS SO ORDERED.**

                                             **s/ S. Thomas Anderson**
                                             S. THOMAS ANDERSON
                                             UNITED STATES DISTRICT JUDGE

                                             Date:  August 28, 2024.