IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **LAMON TERRILL MASSENGILL,** ) | |
| ) | |
| Movant, ) | |
| v. ) | No. 1:23-cv-01037-STA-jay |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING MOVANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. § 2255
ORDER OF DISMISSAL
ORDER ON APPEAL ISSUES**

Before the Court is Movant Lamon Terrill Massengill's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 1). On June 10, 2025, the Court held an evidentiary hearing and received testimony from Massengill and his trial attorney Jennifer Free, Esq. Based on the evidence presented, the Court **DENIES** Massengill's Motion as to his claim that Ms. Free was ineffective by failing to file an appeal.

**BACKGROUND**

On April 12, 2021, a grand jury returned an indictment (no. 1:21-cr-10025, ECF No. 1), charging Massengill with three offenses. Count 1 charged Massengill with possessing with the intent to manufacture, distribute, or dispense cocaine base in violation of 21 U.S.C. § 841(a)(1). Count 2 and Count 3 charged Massengill with being a person previously convicted of a felony offense found in possession of two different firearms, each a violation of 18 U.S.C. § 922(g)(1). Massengill was brought before the Magistrate Judge for an initial appearance on the charges on April 16, 2021. At the conclusion of the initial appearance, the Magistrate Judge appointed CJA

1

panel member Jennifer Free, Esq. to represent Massengill. Ms. Free represented Massengill throughout the proceedings on his criminal charges. The Magistrate Judge held a detention hearing and arraignment on April 29, 2021, at which time Massengill entered a plea of not guilty to the charges.

After the entry of a scheduling order to govern the pretrial phase of the case, on November 24, 2021, the parties notified the Court that they had reached a plea bargain to resolve the charges against Massengill. Massengill had agreed to plead guilty to the controlled substances offense charged in Count 1 and the firearms offense charged in Count 2. In exchange the government agreed to dismiss the remaining firearms count at sentencing. As part of the plea bargain, Massengill waived his right to appeal, unless his sentence exceeded the statutory maximum. Plea Agr. ¶ 6 (no. 1:21-cr-10025, ECF No. 27). Massengill also waived his right to bring a collateral challenge to his sentence under 28 U.S.C. § 2255. *Id*. ¶ 7.

The Court held a hearing on December 13, 2021, to determine whether to accept Massengill's change of plea. During the plea hearing, the undersigned conducted a Rule 11 colloquy, making certain that Massengill understood the charges to which he was pleading guilty, the minimum and maximum penalties, the rights he was giving up by pleading guilty, and the procedure for the sentencing phase. The Assistant United States Attorney also reviewed the factual basis for the charges against Massengill, facts which Massengill admitted in open court. Having satisfied itself that Massengill understood his rights and had voluntarily agreed to waive them as part of his agreement with the government, the Court accepted Massengill's guilty plea as to Counts 1 and 2.

In anticipation of sentencing, the United States Probation Office prepared the presentence report (the "PSR") (no. 1:21-cr-10025, ECF No. 30). According to the PSR, the statutory

maximum sentence for Massengill's drug crime was 20 years' imprisonment. Because Massengill qualified as an armed career criminal under the Armed Career Criminal Act, the statutory minimum on the firearms offense was 15 years and the maximum life in prison. The PSR calculated a total adjusted offense level of 31 and a criminal history category of VI. *Id*. at ¶ 27. Based on an offense level of 31 and a criminal history category of VI, the Guidelines range for Massengill's offenses was 188 months to 235 months. Massengill through appointed counsel Ms. Free filed a position paper on the PSR, stating that Massengill had no objection to the PSR. Def.'s Position Paper, Mar. 14, 2022 (ECF No. 32).

The Court held a sentencing hearing on March 15, 2022. After hearing argument from counsel and allocution from Massengill, the Court adopted the findings of the PSR and analyzed the sentencing factors set forth in 18 U.S.C. § 3553(a).[1] The Court sentenced Massengill to 180 months on each count to run concurrently and three years of supervised release. Judgment (no. 1:21-cr-10025, ECF No. 34) was entered the same day. Massengill did not appeal. Massengill remains in the custody of the Bureau of Prisons, BOP register number 40138-509. The BOP projects his release date as January 31, 2034.

---

[1] Pursuant to 18 U.S.C. § 3553(a), a court must reach an appropriate sentence by considering "the kinds of sentence and the sentencing range" under the advisory Guidelines and "policy statements," as well as the following additional factors: "the nature and circumstances of the offense and the history and characteristics of the defendant; ... the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,] . . . to afford adequate deterrence to criminal conduct[,] . . . to protect the public from further crimes of the defendant[,] and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

Massengill raised three different grounds for relief as part of his § 2255 Motion. Ground 1 alleges that Massengill's trial counsel was ineffective for failing to file a notice of appeal when instructed to do so and to consult with Massengill about an appeal. Massengill alleges he disagreed with the Court's decision to classify him as an armed career criminal and wanted to appeal that aspect of his sentence. Massengill claims he asked Ms. Free to appeal the judgment of the Court and that her failure to appeal violated his right to effective assistance of counsel. Ground 2 alleged that trial counsel was ineffective by failing to advise Massengill he would be subject to the ACCA enhancement. In deciding to accept a plea bargain, Massengill believed he was facing no more than six years' incarceration, and perhaps a sentence as short as two years. Ground 3 alleged that trial counsel failed to object when the Court found Massengill's prior convictions under Tennessee law for aggravated assault and aggravated burglary qualified as ACCA predicate offenses. According to Massengill, his convictions are not qualifying convictions based on the Supreme Court's decision in *Borden v. United States*, 593 U.S. 420 (2021).

The government responded in opposition to Massengill's § 2255 Motion. As part of its Answer (ECF No. 16) to the § 2255 Motion, the government submitted a transcript of Massengill's change-of-plea hearing (ECF No. 16-1) and a declaration from Ms. Free (ECF No. 16-2). Ms. Free stated in her affidavit that as part of her representation of Massengill, she reviewed the plea agreement with Massengill prior to the change-of-plea hearing. Consistent with her general practice in every case, Ms. Free read the plea agreement aloud in its entirety with Massengill and ensured he understood the terms and conditions contained in the agreement before he accepted it. Ms. Free explained to Massengill that the agreement did not provide for a specific sentence and that he faced a mandatory minimum sentence of 15 years.

Ms. Free also stated that she met with Massengill and his spouse before sentencing and read through every word of the PSR with Massengill. Massengill had met with prosecutors to discuss cooperating in other investigations; however, Massengill ultimately decided not to cooperate when his wife expressed a concern about him doing so. Ms. Free opined that Massengill's sentence would have likely been lower, had he provided assistance to the government. Ms. Free stated that any statement she might have made to Massengill about his possible sentence assumed his cooperation with authorities.

Ms. Free finally stated that she discussed with Massengill his prior convictions for burglary, aggravated burglary, and aggravated assault. Based on his prior convictions, Ms. Free advised Massengill before he accepted the plea bargain that he would be considered an Armed Career Criminal offender and would face a mandatory minimum sentence of 15 years on the firearms charge against him. Ms. Free once more advised Massengill that he would qualify as an Armed Career Criminal offender once she reviewed the PSR with Massengill. Ms. Free denied that Massengill or anyone else indicated to her that Massengill wanted to appeal. Ms. Free stated that Massengill and his wife left the courtroom immediately after the conclusion of the sentencing hearing.

The government also made copies of several of Massengill's previous convictions exhibits to its response. Massengill was charged with a string of burglaries from 1996 and 1997 in Chester County, Tennessee. According to the exhibits filed by the government, Massengill ultimately pleaded guilty to the relevant charges. The Circuit Court for Chester County, Tennessee entered separate judgments as to each charge on December 17, 1997. In an indictment dated March 3, 1997, and docketed as *State v. Lamon Massengill*, case no. 3637 (ECF No. 16-3), a grand jury in Chester County, Tennessee charged Massengill with two counts of aggravated burglary and two

counts of theft of property over $1,000, based on the robbery of two different houses committed in June 1996. The court sentenced Massengill to four years' imprisonment as to each of the aggravated burglary charges and three years on the theft of property charges, each sentence to run concurrently.

In an indictment dated July 7, 1997, and docketed as *State v. Lamon Massengill*, case no. 3665 (ECF No. 16-4), a Chester County grand jury charged Massengill with committing aggravated burglary and theft of property over $500 on March 26, 1997. The court sentenced Massengill to four years on the aggravated burglary and two years on the theft of property, both sentences to run concurrently to each other and consecutively to Massengill's sentence in case no. 3637.

In an indictment dated November 3, 1997, and docketed as *State v. Lamon Massengill*, case no. 3683 (ECF No. 16-5), a Chester County grand jury charged Massengill with burglary, theft of property, and vandalism, all committed on June 27, 1997. The court sentenced Massengill to four years on the burglary and two years on the theft of property, both sentences to run concurrently to each other and consecutively to Massengill's sentence in case no. 3637. The government's exhibit does not show what the disposition of the vandalism charge was.

Finally, in an information dated November 19, 1997, and docketed as *State v. Lamon Massengill*, case no. 3692 (ECF No. 16-6), the State of Tennessee charged Massengill with two counts of aggravated burglary, one count of theft of property over $1,000, and one count of theft of property over $500, all based on the robbery of two different houses, one in May 1996 and the other in June 1996. The court sentenced Massengill to four years on the aggravated burglaries, three years on the theft of property over $1,000, and two years on the theft of property over $500,

6

all sentences to run concurrently to each other and with Massengill's sentence in case no. 3637 and consecutive to his sentences in the other cases.

In its last exhibit, the government made copies of Massengill's previous conviction for aggravated assault part of the record. In an indictment dated September 30, 2002, and docketed as *State v. Lamon Massengill*, case no. 02-612 (ECF No. 16-7), a Madison County, Tennessee grand jury charged Massengill with two counts of attempted second degree murder and two counts of aggravated assault on July 7, 2002. The record shows that Massengill pleaded guilty to the aggravated assault charges and received sentences of 10 years' incarceration on each charge.

On August 28, 2024, the Court entered an order denying in part Massengill's § 2255 Motion. The Court first held that questions of fact existed over Massengill's claim that Ms. Free failed to follow Massengill's instructions to file an appeal. Because an evidentiary hearing was necessary to decide the claim, the Court referred to the United States Magistrate Judge the question of whether Massengill was entitled to appointment of counsel. The Magistrate Judge determined that Massengill was entitled to appointed counsel and made the appointment. The Court dismissed the remaining claims, holding that the collateral attack waiver in Massengill's plea agreement was enforceable. In the alternative, the Court held that the remaining claims failed on the merits.

Following the appointment of counsel to represent Massengill, the Court held the evidentiary hearing on June 10, 2025. The Court first received testimony from Massengill himself. On direct examination, Massengill testified that upon hearing the sentence imposed at his sentencing hearing on March 15, 2022, he was "shocked" and "overwhelmed." Massengill explained that he had expected to receive a sentence of two to six years and believed that the 15-year sentence he received was excessive. According to Massengill, he conferred with Ms. Free in a witness room outside the courtroom just after the sentencing. When Massengill's spouse

7

attempted to enter the room, Ms. Free asked her to remain outside. Massengill testified that Ms. Free explained to him that he had waived his right to appeal the sentence as part of a waiver in his plea agreement. Ms. Free advised Massengill that his only opportunity to reduce the sentence was cooperation with authorities in their investigation of other drug crimes. Massengill testified that he said "nothing else" in response to Ms. Free's counsel. Massengill elected not to cooperate with the police out of concern for the safety of his family and what the targets of the investigation might do in retaliation for Massengill's cooperation.

Massengill testified that he remained free on bond until he was required to report to the BOP to serve his sentence. In the interim, Massengill had two more telephone conversations with Ms. Free about his case. In the first telephone call, Massengill and Ms. Free discussed what steps Massengill was taking to order his affairs before he went to prison. Massengill told Ms. Free he wanted to do whatever possible "to go back to court to get his sentence overturned." Massengill believed this first conversation occurred at some point in March 2022. In the second telephone call, Massengill again discussed with Ms. Free the possibility of cooperating with authorities. Massengill admitted that he never used the word "appeal" during the call but did discuss With Ms. Free getting the sentence "overturned." Massengill believed that the second call occurred in late March or early April 2022. Massengill acknowledged during his testimony that his plea agreement contained an appeal waiver.

On cross-examination, Massengill admitted that he had initially signed a statement about his willingness to cooperate with the investigation at the outset of his criminal case and that the government did not oppose the Court granting Massengill a bond based on his potential cooperation. Massengill testified that he did not remember ever discussing with Ms. Free the potential mandatory minimum sentence he faced under the Armed Career Criminal Act or the fact

8

that his prior convictions meant he qualified for a mandatory minimum sentence of 15 years. Massengill also testified that he did not recall ever discussing the ACCA mandatory minimum with Agent Rodney Weaver of the Federal Bureau of Investigation. Massengill again explained that he decided not to cooperate to protect his family from potential retaliation. Massengill also testified that he discussed with Ms. Free his double jeopardy concerns about being prosecuted for the same conduct in both federal court and state court. Massengill even addressed those concerns to the Court at the sentencing hearing. However, Massengill admitted that he did not express to the Court any surprise about his 15-year sentence at the sentencing hearing.

As far as his right to appeal, Massengill did not remember that the Court explained his appeal rights to him at the conclusion of the sentencing or the fact that he had 14 days to file a notice of appeal. Massengill conceded that he did not directly instruct Ms. Free to file a notice of appeal, though he did ask her about his right to appeal.

The Court next received testimony from Ms. Free. Ms. Free testified that during her representation of Massengill, Agent Weaver of the FBI contacted her about Massengill giving a statement. Massengill was initially willing to cooperate with Agent Weaver and agreed to meet with him to discuss the investigation. According to Ms. Free, Massengill hoped that he might receive a sentence of five years and avoid the mandatory minimum under the ACCA. Ms. Free also explained that Massengill and Agent Weaver were personally acquainted and had known each other for many years. Massengill subsequently decided not to cooperate out of concern for the safety of his family members. Ms. Free also met with Massengill and his wife at her office to discuss his case and possible cooperation. Ms. Free testified that Massengill's wife told her during the meeting she was fearful and not willing for Massengill to cooperate even if his cooperation meant Massengill would receive a much lower sentence.

9

After Massengill accepted the government's plea offer and agreed to change his plea, Ms. Free explained the sentencing procedures to him. Once the probation officer prepared the presentence report, Ms. Free again met with Massengill and his wife at Ms. Free's office to discuss it. Ms. Free read aloud the entirety of the PSR to them and went over all of the information to ensure Massengill understood the contents of the report. Ms. Free also went over the appeal waiver with Massengill and advised him about the consequences of the waiver and his decision not to cooperate. In Ms. Free's opinion, Massengill understood the terms of the appeal waiver and the fact that he was giving up his right to appeal.

Ms. Free next testified about the circumstances of the sentencing hearing. Massengill and his wife arrived 20 minutes late for sentencing. When Ms. Free called to ascertain their whereabouts, Massengill had stopped for breakfast. Ms. Free was concerned that Massengill's tardiness might affect whether the Court allowed him to remain on bond after the sentencing. When Massengill did arrive at the courthouse, Ms. Free did not have an opportunity to meet with him before the hearing began. During the sentencing hearing, Ms. Free informed the Court that she had fully reviewed the PSR with Massengill. Once the sentencing hearing was over, Massengill and his wife immediately left the courtroom.

Ms. Free denied that she met with Massengill in a witness room after the sentencing hearing. Ms. Free testified that Massengill's testimony about their attorney-client conference actually occurred after his change-of-plea hearing, not after the sentencing. Ms. Free also denied that she had any telephone calls with Massengill after the sentencing. Ms. Free did not deny that she had spoken with Massengill on the telephone and discussed the option of cooperating with authorities in exchange for a lower sentence. Ms. Free opined that Massengill was mistaken about when the calls with her had taken place. Ms. Free testified that the calls had occurred prior to

sentencing and at times when Massengill was still deciding whether to offer his cooperation to the government. Ms. Free also had her staff and the other attorney in her office review phone and appointment logs to determine whether Massengill had contacted anyone in the office and the call had been overlooked. Ms. Free testified that she was able to determine that Massengill had not contacted her or her office by telephone at any time after the sentencing.

## STANDARD OF REVIEW

A petitioner seeking § 2255 relief "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Gabrion v. United States*, 43 F.4th 569, 578 (6th Cir. 2022) (citation omitted). A movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *United States v. Brown*, 957 F.3d 679, 690 (6th Cir. 2020). "[C]onclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *Gabrion*, 43 F.4th at 578 (citation omitted)).

The Sixth Amendment guarantees criminal defendants "the right . . . to have the Assistance of Counsel for [their] defence." U.S. Const. am. VI. The right to counsel includes "the right to the effective assistance of counsel." *Garza v. Idaho*, 586 U.S. 232, 237 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). The Supreme Court has described the right to effective assistance of counsel as "a bedrock principle" and the "foundation for our adversary system" of criminal justice. *Martinez v. Ryan*, 566 U.S. 1, 12 (2012). "[T]he Sixth Amendment's requirement that defendants receive 'the effective assistance of competent counsel' extends to all critical stages of a criminal proceeding." *Gilbert v. United States*, 64 F.4th 763, 770 (6th Cir. 2023) (quoting *Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019)). A claim that an attorney's ineffective

11

assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is cognizable under § 2255. *Gilbert*, 64 F.4th at 770 (citing *Massaro v. United States*, 538 U.S. 500, 504, 508–09 (2003)). A court may only grant relief under § 2255 if the petitioner demonstrates "a fundamental defect which inherently results in a complete miscarriage of justice." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

In order to carry his burden and show that he was deprived of his right to counsel, Massengill "must show deficient performance by counsel and resulting prejudice to the defendant." *Griffin*, 330 F.3d at 736 (citing *Strickland*, 466 U.S. at 687, 694). First, to demonstrate deficient performance, Massengill "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 at 690. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

Then, to demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*,

12

466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

Section 2255 indicates: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon[.]" 28 U.S.C. § 2255(b); *see also* Rules Governing § 2255 Proceedings, Rule 4(b). The Sixth Circuit has "interpreted this statutory language (and the accompanying procedural rules) to require a hearing only if a prisoner meets a standard analogous to the summary-judgment test by creating a legitimate dispute over a legally important fact." *Wallace v. United States*, 43 F.4th 595, 606–07 (6th Cir. 2022) (citations omitted). "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

## **ANALYSIS**

In the only ground for relief left to be decided, Massengill alleges that Ms. Free provided ineffective assistance when she did not follow Massengill's instructions to appeal the Court's judgment. The Supreme Court has held that an attorney provides ineffective assistance "if, after consulting with his client, he disregards specific instructions from his client to file a notice of appeal"—"a purely ministerial task." *Pola v. United States*, 778 F.3d 525, 533 (6th Cir. 2015) (quoting *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000)). If a § 2255 movant can show that his trial counsel failed to appeal "either after the client's express instructions or because there is no reasonable strategic reason not to appeal, then the defendant was prejudiced because he has been

13

deprived of the appellate proceeding altogether if there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* (citing *Roe*, 528 U.S. at 483–84).

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine*, 488 F.3d at 333 (internal quotation marks omitted). Having received testimony from Massengill and Ms. Free, the Court finds from the evidence that Massengill never directed Ms. Free to file a notice of appeal. The Court credits Ms. Free's testimony that Massengill did not speak with her immediately after his sentencing hearing and never made contact with her by phone or otherwise following sentencing. There is no credible evidence then that Massengill ever instructed Ms. Free to appeal the Court's judgment.[2]

The Court further finds that Ms. Free explained to Massengill prior to sentencing that he faced a mandatory minimum sentence of 15 years because his prior convictions qualified him as an armed career criminal for purposes of the ACCA. Ms. Free counseled Massengill that the only way he could avoid the mandatory minimum was cooperation with the government. Both Massengill and Ms. Free offered consistent testimony that Massengill chose not to cooperate. Taken together with the appeal waiver in his plea agreement, Massengill understood that his sentence could be the mandatory minimum of 15 years and that his only avenue to avoid the mandatory minimum was cooperation, not an appeal. Massengill did testify at the evidentiary hearing that he wanted to do anything he could to avoid the 15-year sentence, even after the Court

---

[2] Massengill alleged in his § 2255 Motion that he could introduce proof in support of his claim about the appeal at an evidentiary hearing, including testimony from his wife, phone records, and correspondence with Ms. Free. Massengill introduced only his own testimony at the evidentiary hearing and did not offer any other witnesses or exhibits to prove up his claim.

14

pronounced the sentence. However, the government has shown through Ms. Free's testimony, which the Court accepts as true, that Massengill expressed that hope prior to sentencing and at times when Ms. Free advised him to cooperate with the government, not after sentencing or when the time to appeal actually arose. None of the proof shows that Massengill expressly directed Ms. Free to appeal. On the contrary, Massengill admitted that he never expressly instructed Ms. Fee to appeal.

Furthermore, Massengill has not alleged, much less shown, that Ms. Free should have consulted with him about filing an appeal and yet failed to do so. *Pola*, 778 F.3d at 534 (holding that the district court "erred by considering only whether [counsel] was ineffective in the event that [the defendant] did not expressly instruct his attorney to file an appeal"). "In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, . . . the question [is] . . . whether counsel in fact consulted with the defendant about an appeal." *Neill v. United States*, 937 F.3d 671, 676 (6th Cir. 2019) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000)). Here, "consult" means to advise "the defendant about the advantages and disadvantages of taking an appeal, and [to] mak[e] a reasonable effort to discover the defendant's wishes." *Id.* (quoting *Roe*, 528 U.S. at 478). However, counsel only has a constitutional duty to consult when "a rational defendant would want to appeal" or when "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* (quoting *Roe*, 528 U.S. at 480).

Massengill has not alleged that Ms. Free should have consulted with him about his wishes to file an appeal. The record shows that Massengill knowingly and voluntarily pleaded guilty to the drug and gun charges against him and that he agreed to waive his right to appeal his sentence. The Court finds from the proof that Massengill freely decided not to offer his cooperation with the

15

government with the knowledge that he would likely receive a 15-year mandatory minimum. Nothing from this record suggests a rational defendant would have wanted to appeal or that Massengill suggested to Ms. Free his desire to appeal. *See Phillips v. United States*, No. 22-1742, 22-1743, 2023 WL 5499543, at *3 (6th Cir. May 25, 2023) (holding that a movant was not entitled a certificate of appealability on his claim that counsel was ineffective for failing to appeal where the defendant had pleaded guilty and waived his right to appeal).

For all of these reasons, the Court finds that Massengill has not carried his burden to show that Ms. Free was ineffective by failing to file a notice of appeal. Therefore, Massengill's § 2255 Motion is **DENIED** as to this claim. This case is dismissed. The Clerk of Court is directed to enter judgment.

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773

16

(6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337). In this case, for the reasons previously stated, Massengill's claims lack substantive merit, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). *Kincade*, 117 F.3d at 952.

Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal in forma pauperis is **DENIED**. If Massengill files a notice of appeal, he must also pay the full $605 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed in forma pauperis and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days (see Fed. R. App. P. 24(a)(4)-(5)).

    **IT IS SO ORDERED.**

        **s/ S. Thomas Anderson**
        S. THOMAS ANDERSON
        UNITED STATES DISTRICT JUDGE

Date: October 10, 2025.